**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JEFFREY M. YOUNG-BEY and <br> MARTINA YOLANDA JONES, <br><br> Defendants. | Criminal No. 21-661 (CKK) |

**MEMORANDUM OPINION**
(January 22, 2024)

Before the Court is Defendant Young-Bey's [146] Motion to Dismiss, in which he seeks dismissal of the [141] Superseding Indictment, or at least Counts One, Three, and Five of the [141] Superseding Indictment, on the basis of prosecutorial vindictiveness. For the reasons that follow, the Court **DENIES** Defendant Young-Bey's [146] Motion to Dismiss.

**I. BACKGROUND**

This criminal case involves two Defendants, Jeffrey Young-Bey and Martina Jones, who allegedly conspired to jointly execute a scheme to steal a vacant property in the District of Columbia through use of a fraudulent deed. *See* Mem. Op., ECF No. 157, at 1. After recording the fraudulent deed, they allegedly transferred the property to Defendant Jones; the two then allegedly took out a mortgage loan against the property and split the loan proceeds. *See id.* at 1–2. Later, Defendant Young-Bey allegedly used a similar fraudulent scheme to steal another property, this time acting on his own. *See id.* at 2.

In July 2020, the Government began its investigation of Defendants, with agents of the Federal Bureau of Investigation serving a search warrant via online portal on Google LLC for

1

various mail accounts related to this case. ECF No. 146 ("Def.'s Mot.") at 1. Over one year later, on November 9, 2021, a grand jury returned an eleven-count [1] Indictment charging Defendants Young-Bey and Jones with various offenses. In this initial [1] Indictment, Defendants Young-Bey and Jones were jointly charged with Count One, Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349; and Count Two, Mail Fraud in violation of 18 U.S.C. § 1341. Defendant Young-Bey was alone charged with Count Three, Mail Fraud in violation of 18 U.S.C. § 1341; Counts Four and Five, Expenditure Money Laundering in violation of 18 U.S.C. § 1957; and Counts Seven through Eleven, Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. Defendant Martina Jones was alone charged with Count Six, Expenditure Money Laundering in violation of 18 U.S.C. § 1957.

On October 14, 2022, Defendant Young-Bey rejected a plea offer extended by the Government. *See* Minute Order, Oct. 14, 2022. On November 22, 2022, Assistant United States Attorney Christopher Howland joined the case and filed his Notice of Appearance. *See* ECF No. 41. On April 14, 2023, Assistant United States Attorney Kevin Rosenberg joined the case and filed his Notice of Appearance. *See* ECF No. 61. On May 9, 2023, the Government presented the plea offer extended to Defendant Young-Bey on the record, along with statutory penalties and advisory sentencing guidelines; Defendant Young-Bey affirmed his decision to reject the plea offer. *See* Minute Order, May 10, 2023. The matter was scheduled to proceed to trial on July 18, 2023 but was continued on July 14, 2023 due to counsel for Defendant Young-Bey contracting COVID-19. *See* Mem. Op. & Order, ECF No. 138.

Then, on August 15, 2023, Defendants were charged by [141] Superseding Indictment. This new indictment was amended to include bank fraud in Count One. It also added two substantive bank fraud charges that coincided with the two substantive mail fraud charges

contained in the first [1] Indictment.  The Government explained to Defense counsels via email that to prove the charges in the [141] Superseding Indictment would not require any new witnesses or evidence.  *See* Def.'s Mot. at 3; ECF No. 150 ("Gov.'s Opp'n") at 3.

Defendants Jeffrey Young-Bey and Martina Jones are now jointly charged in the [141] Superseding Indictment with Count One, Conspiracy to Commit Mail Fraud and Bank Fraud in violation of 18 U.S.C. § 1349; Count Two, Mail Fraud in violation of 18 U.S.C. § 1341; Count Three, Bank Fraud in violation of 18 U.S.C. § 1344; and Count Six, Conspiracy to Commit Expenditure Money Laundering in violation of 18 U.S.C. § 1956(h).  Defendant Young-Bey is alone charged with Count Four, Mail Fraud in violation of 18 U.S.C. § 1341; Count Five, Bank Fraud in violation of 18 U.S.C. § 1344; Counts Seven and Eight, Expenditure Money Laundering in violation of 18 U.S.C. § 1957; and Counts Nine through Thirteen, Aggravated Identity Theft in violation of 18 U.S.C. § 1028A.

Defendant Young-Bey then filed the instant [146] Motion to Dismiss due to prosecutorial vindictiveness on January 5, 2024.  That Motion is now ripe for the Court's resolution.

## II. LEGAL STANDARD

Prosecutors have broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary.  *United States v. Armstrong*, 517 U.S. 456, 464 (1996).  Therefore, to succeed on a claim of vindictive prosecution, a defendant must establish that an increased charge was "brought solely to 'penalize' [him] and could not be justified as a proper exercise of prosecutorial discretion."  *United States v. Goodwin*, 457 U.S. 368, 380 n.12 (1982).  To do so, a defendant may show "actual vindictiveness… through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights."  *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987).  Otherwise, in certain rare situations, a defendant may create

a "presumption of vindictiveness" through "facts [that] indicate 'a realistic likelihood of vindictiveness." *See id.*

"[I]n the run-of-the-mill pretrial situation, the prosecutor [does] not have any reason to engage in vindictive behavior[.]… [D]efendants routinely assert procedural rights prior to trial and [ ] prosecutors are unlikely to respond vindictively to this everyday practice." *Id.* at 1247. As such, to show vindictiveness in the pretrial context, a defendant must point to "'something [more] than routine invocations of procedural rights.'" *United States v. Meadows*, 867 F.3d 1305, 1312 (D.C. Cir. 2017) (quoting *Meyer*, 810 F.2d at 1247). In other words, when a prosecutorial decision to increase a charge is made after a defendant has exercised a legal right but before trial, there must be additional facts to give rise to a presumption of prosecutorial vindictiveness. *Meyer*, 810 F.2d at 1246.

If the defendant succeeds in creating a presumption of vindictiveness, the Government then has the burden of presenting "objective evidence justifying" the superseding indictment. *See id.* at 1245 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27–29 (1974)). The burden on the Government is "admittedly minimal—any objective evidence justifying the prosecutor's actions will suffice." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (per curiam). If the government meets this burden, the defendant cannot prevail unless she proves that the government's justification was pretextual. *Id.* at 692.

### III. DISCUSSION

Defendant Young-Bey's argument rests on a "presumption of vindictiveness" theory. *See* Def.'s Mot. at 5. He states that the prosecution increased charges against him in the [141] Superseding Indictment after he asserted his constitutional rights to counsel and a jury trial. *Id.* He then argues that "there are additional circumstances to support the inference that the

4

government's motivation was to punish Mr. Young-Bey for exercising his constitutional rights." *Id.* The Government argues that Defendant has failed to demonstrate a presumption of vindictiveness; they nevertheless provide objective evidence to justify the Superseding Indictment. *See* Gov.'s Opp'n at 11. Defendant then argues that the Government's arguments "miss[] the mark" and are pretextual. *See* ECF No. 152 ("Def.'s Reply") at 6.

The Court proceeds with a step-by-step analysis of the burden-shifting scheme described above.

### A. Increase in Charges

It is clear that there was an increase in charges. The [141] Superseding Indictment adds and broadens the counts in the initial [1] Indictment. *See* Def.'s Reply at 2 ("The government does not and cannot dispute that it increased the number of charges against Mr. Young-Bey.").

### B. Exercise of a Legal Right

It is also clear that Defendant Young-Bey asserted a legal right. *See id.* ("Nor can there be any fair question whether Mr. Young-Bey exercised a legal right"). The Sixth Amendment guarantees a defendant in a criminal prosecution the right to "have the Assistance of Counsel for his defense," U.S. Const. Amend. VI; this includes a right to the counsel of the defendant's choice, although this right is not absolute, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 164 (1988)). The Sixth Amendment also guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. Amend. VI. As Defendant Young-Bey explains, he "exercised his right to lead counsel of his choice and a jury trial" when moving for a continuance. Def.'s Mot. at 6.

On July 13, 2023, five days before the scheduled trial, Defendant Young-Bey filed a [126] Motion for Continuance of Trial, asking to continue the trial until a later date due to his lead attorney having COVID-19. *See* ECF No. 126 at 1. He had other competent attorneys representing him, *see* ECF No. 125 at 2, but his lead attorney had been unable to meaningfully assist in trial preparation for weeks and was continuing to test positive, ECF No. 126 at 1–2. Defendant Jones supported the request for a continuance, noting, among other reasons, that she "agree[d] that Mr. Young Bey ought to have the benefit of his lead attorney in this case." ECF No. 127 at 1. The Government did not object to the continuance. ECF No. 125 at 2. Based on these filings and discussion with the parties at the pretrial conference and over email, the Court granted the [126] Motion to Continue and rescheduled the trial for January 24, 2024.

### C. "Additional Facts" Giving Rise to Presumption of Vindictiveness

Therefore, the question is whether there is "something more" or "additional facts" that give rise to a presumption of vindictiveness. Defendant argues the following facts are "something more": (1) the Government's assessment of the proper extent of prosecution had already crystallized, as they were ready to proceed to trial; (2) the Superseding Indictment was based on the same events and facts already known to the prosecution at the time of the original Indictment; (3) the Government used the exigencies of the COVID-19 pandemic—specifically, Defendant's lead counsel's sickness—to take advantage of having obtained a preview of Defendant's trial defenses; and (4) Defendant now faces an increased potential period of incarceration under the Superseding Indictment. *See* Def.'s Mot. at 6–8. The Court finds that these facts give rise to a presumption of vindictiveness.

#### i. Proper Extent of Prosecution had Crystallized on the Eve of Trial

Defendant Young-Bey argues that because the Government was ready to proceed to trial—

until it was continued a mere four days before it was scheduled to begin—the Government's assessment of the proper extent of prosecution had been crystallized and, therefore, adding charges against Defendant later gives rise to a presumption of prosecutorial vindictiveness. *See* Def.'s Mot. at 10.

The Court begins by explaining how the Supreme Court has distinguished between pretrial and post-trial settings in *United States v. Goodwin*. 457 U.S. at 381. In the pretrial context, "'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (quoting *United States v. Goodwin*, 457 U.S. 368, 381 (1982)). Therefore, the burden-shifting scheme explained above applies. In contrast, a presumption of vindictiveness "automatically" arises whenever charges are increased post-trial. *Meyer*, 810 F.2d at 1245 (citing *Blackledge*, 417 U.S. at 27–29).

This case poses a unique situation, where it is technically pretrial—trial is scheduled to begin January 24, 2024—but resembles post-trial, as the parties were ready to proceed to trial months ago until it was continued four days prior to the scheduled date. At that point, Defendant had rejected a plea offer on the record months earlier, the parties had completed their briefing of pretrial motions, nearly all motions had been resolved by the Court, witness and exhibit lists had been exchanged, jury instructions had been finalized, and a pretrial conference had been held. The case was only continued due to Defendant's lead counsel having COVID-19. For all intents and purposes, all parties were ready to proceed to trial.

According to Defendant, "if there is a moment when one can say that the [G]overnment's thoughts about its case have 'crystallized,… it must be the one where the Government announces

7

to the court that it is ready to begin trial and present its evidence to the fact-finder." Def.'s Mot. at 12 (quoting *Simms v. United States*, 41 A.3d 482 (D.C. 2012)).

In the case cited by Defendant, the parties appeared in court on the scheduled trial date, the government announced that they were ready to try the case, but the trial was continued due to the defendant not being ready thanks to issues with a subpoena. *Simms*, 41 A.3d at 484–85. Four days later, the government amended the information to include an additional charge. *Id.* at 485. The District of Columbia Court of Appeals considered the Government's unequivocal statement that they were ready to try the case to be "a clear signal that it believes the back-and-forth of pretrial litigation is over" and, accordingly, found that the reason for the distinction between pretrial and post-trial settings (and the impact on the presumption of vindictiveness thereon) did not pertain. *Id.* at 491. The court found that the specific sequence of events that occurred was an "additional fact… [that] tip[ped] the balance" in favor of applying the presumption of vindictiveness: "the government… announce[s it is] ready for trial and then, after the defense exercises a right and is granted a continuance,… bring[s] additional charges." *Id.* at 491–93.

That same sequence exists here. All parties, including the Government, were ready to proceed to trial and, accordingly, their assessment of the proper extent of prosecution can be said to have crystallized. Four days before the trial was scheduled to begin, Defendant Young-Bey exercised his Sixth Amendment rights and the Court granted a continuance of the trial. Approximately one month later, the Government added charges to a Superseding Indictment. As a court in this circuit put it, this sequence of events is "dispositive because… 'the very reasons the Supreme Court [in *Goodwin*] determined that the application of a presumption of vindictiveness should be limited pretrial[ ] do not pertain' when the government 'signal[s] that it believes that the back-and-forth of pretrial litigation is over.'" *United States v. Allgood*, 610 F. Supp. 3d 239, 251

8

(D.D.C. 2022) (RDM) (distinguishing case from *Simms*, as the government never represented that it was ready to proceed to trial, and suggesting that if it had been, the outcome would be different). The Court finds that this gives rise to a presumption of vindictiveness.

The Court will conduct a more cursory analysis of the other factors presented by Defendant Young-Bey to support this presumption, which are less dispositive on the issue.

### ii. Preview of Defense Arguments

Defendant argues that "the timing suggests that the government penalized Mr. Young-Bey by using the COVID-19 pandemic to take advantage of having already seen an advanced preview of his defense arguments" and learning of defects in their case-in-chief by then filing a Superseding Indictment. Def.'s Mot. at 8–9; *see also* Def.'s Reply at 3. Other courts have found that "timing of the amendment [to charges] [can be] suspect." *Simms*, 41 A.3d at 491. However, a "temporal sequence of events" alone is not enough to give rise to a presumption. *See United States v. Miller*, 948 F.2d 631, 634 (10th Cir. 1991) (stating also that "as a policy matter, we find a presumption of vindictiveness based on timing alone unsound").

The Court summarizes the temporal sequence here: additional charges came after the Government was ready to proceed to trial, at which time they had gleaned information of which they were previously aware, e.g., witness lists and details, including "a brief description of the focus of each individual's testimony," ECF No. 112 at 4; notice of Defendant's intent to challenge certain elements of one of the counts, for example, *see* Gov.'s Opp'n at 2 (stating that they became aware of this intent "[t]hroughout the pretrial proceedings"); and the Court's rulings on various evidentiary issues. This sequence of events bears on the Court's analysis regarding the presumption. *Cf. United States v. Krezdorn*, 693 F.2d 1221, 1227 (5th Cir. 1982) (the court upheld the lower court's finding of a presumption of vindictiveness where, along with other factors, the

9

"prosecutor's evidentiary theory was found to be erroneous" at trial, "giving rise to a temptation to engage in 'self-vindication.'").

### iii. Superseding Indictment Based on Same Facts as Original Indictment

Defendant then argues that because the facts upon which the Superseding Indictment was based were already known to the Government at the time of the original Indictment, this gives rise to the presumption of prosecutorial vindictiveness. *See* Def.'s Mot. at 7.

However, case law is clear that "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Goodwin*, 457 U.S. at 382. For example, "officials often make charging decisions before analyzing thoroughly a case's legal complexities," and particularly where the case is complicated, they may decide to bring additional charges after further factual investigation or legal analysis. *Meyer*, 810 F.2d at 1247. This is true with the case at bar—a complicated matter involving a series of financial transactions, mortgage documents, title inspections, deed transfers, and email accounts—and where the Government continued to conduct legal research throughout this case's pendency. *See* Gov.'s Opp'n at 7, 11.

Therefore, that a Superseding Indictment is based on the same facts and events as the initial Indictment is not extraordinary and, considered alone, would not give rise to a presumption of vindictiveness. However, it is something that the Court can consider in finding this presumption to be met, especially where throughout the course of litigation the Government never suggested that it was contemplating adding charges, *see* Def.'s Mot. at 6, but they did so after Defendant Young-Bey exercised his legal rights, *cf. United States v. LaDeau*, 734 F.3d 561, 568 (6th Cir. 2013) (stating that "[t]he government has never suggested that any other development altered its perception of the case during the thirteen months that it was pending, so there is nothing to indicate

that the superseding indictment compensated for unexpected changes or an incomplete initial grasp of the pertinent issues or facts" and ultimately holding that the district court did not err in finding that there was a significant prosecutorial stake in deterring the defendant's exercise of his legal rights).

### iv.   Increased Potential Penalty

Finally, Defendant argues that an increased potential penalty under the new indictment is further evidence giving rise to a presumption of vindictiveness. Def.'s Mot. at 10. The parties disagree as to whether Defendant would in fact be exposed to a greater sentence under the Superseding Indictment as opposed to the original Indictment. *See* Def.'s Mot. at 10; Gov.'s Opp'n at 10 (explaining that there would be no increase in potential punishment under the Superseding Indictment according to the United States Sentencing Guidelines' grouping rules); Def.'s Reply at 4 (stating that his potential offense level would be increased due to the additional felony charges).

The Court acknowledges that the potential for an increased sentence is a factor considered when assessing the presumption of vindictiveness. *See Blackledge v. Perry*, 417 U.S. 21, 27 (1974) (increased punishment can indicate vindictiveness).

*     *     *

The Court finds that the Defendant has demonstrated a presumption of prosecutorial vindictiveness through "additional facts"—most significantly, that the Government was ready to proceed to trial and, therefore, their assessment of the proper extent of prosecution can be said to have crystallized at that time. The Court now moves to consider whether the Government has met their burden of justifying the Superseding Indictment.

### D. Government's Burden of Justifying Superseding Indictment

To rebut Defendant Young-Bey's presumption, the Government must present "objective

11

evidence justifying" their Superseding Indictment. *Meyer*, 810 F.2d at 1245. However, as the Court stated above, the burden on the Government is "admittedly minimal—any objective evidence justifying the prosecutor's actions will suffice." *Safavian*, 649 F.3d at 692.

Here, the Government explains that they added additional charges based on a reevaluation of the case. They continue that "the case has evolved through the eyes of multiple attorneys," *id.*, including attorneys Howland and Rosenberg, who both joined long after the original Indictment had been returned, *see* ECF No. 1 (original Indictment in November 2021); ECF No. 41 (Howland joining in November 2022); ECF No. 61 (Rosenberg joining in April 2023). Howland and Rosenberg were "the third and fourth attorneys to review the evidence in the case and relevant violations of law, a review that has occurred years after the initial investigation." Gov.'s Opp'n at 11. Such review included "reassessing the relevant statutes," including 18 U.S.C. § 1344, and "a reevaluation of the application of the expansion of the definition of the term 'Financial Institution'… to include private mortgage lending companies" such as Hard Money Bankers. *Id.* at 7, 11. They explain that "when a continuance allowed for more time," they conducted further legal research and added charges that were factually and legally supported. *Id.* at 11.

The Court finds that the Government's evidence meets the "minimal" burden of justifying the Superseding Indictment. As other courts have found, "[a] mistake or oversight in the prosecutor's initial decision is a sufficient explanation to negate a subsequent claim of vindictiveness." *United States v. Taylor*, 749 F.2d 1511, 1514 (11th Cir. 1985). Here, attorneys Howland and Rosenberg, who were not active at the time of the return of the original Indictment, decided to bring additional charges when given the time to conduct legal research, including a reassessment of the scope of a key legal term that had changed over time. Based on this additional research, they then brought additional charges. *Cf. United States v. Gary*, 291 F.3d 30, 34 (D.C.

Cir. 2002) (when discussing the presumption, stating that "[t]he Government had every right to prosecute [defendant] for *both* of her fraudulent schemes."). This explanation rebuts Defendant Young-Bey's presumption of vindictiveness. *Cf. Meadows*, 867 F.3d at 1315; *Allgood*, 610 F. Supp. 3d at 251–52 (describing the prosecutor's "realization" about a legal standard that precipitated a new indictment); *United States v. Poole*, 407 F.3d 767, 777 (6th Cir. 2005) ("[T]he government has adequately rebutted any presumption of vindictiveness by showing that its decision to re-indict was not motivated by a vindictive desire to punish the defendant for exercising his right to trial, but rather a re-evaluation of the case, in light of all the evidence elicited during trial, subsequent jury discussions, and evidentiary rules affecting the admissibility of relevant evidence.").

### E. Defendant's Showing of Pretext

Having found the Government satisfied their burden, Defendant Young-Bey can only prevail on the pending motion if he proves that Government's justification was pretextual. *See Safavian*, 649 F.3d at 692.

Defendant is aware of this, stating in a footnote that "[e]ven if the government meets this burden,… the defendant firmly beliefs that the government's justification was pretextual." Def.'s Opp'n at 6 n.4. To show pretext, Defendant questions how attorneys Howland and Rosenberg did not realize sooner that Hard Money Bankers was a "financial institution" within the scope of the relevant statutory provision. *Id.* at 6. He also argues that, as "the facts and the law have remained constant since" the first Indictment, "[a]dding new prosecutors to a case does not permit the government to add vindictive charges." *Id.*

The Court is not convinced that the Defendant has demonstrated pretext. That the Government has prosecutorial discretion is the starting point of this burden-shifting analysis. *See*

13


*Goodwin*, 457 U.S. at 382 ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution."). Whether new attorneys join a case or research is conducted late does not necessarily mean that decisions made exceed that discretion. And here, the Court finds that the Government has justified that charging Defendant Young-Bey with a Superseding Indictment was operating within their discretionary bounds.

*    *    *

Accordingly, the Court finds that while Defendant Young-Bey demonstrated a presumption of prosecutorial vindictiveness, the Government satisfactorily provided objective evidence justifying the Superseding Indictment, and Defendant Young-Bey failed to show that this justification was pretextual.

### IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant Young-Bey's [146] Motion to Dismiss. An Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge