## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

UNITED STATES OF AMERICA,

    v.

JEFFREY M. YOUNG-BEY and
MARTINA YOLANDA JONES,

    Defendants.

</td><td>

Criminal No. 21-661 (CKK)

</td></tr>
</table>

## MEMORANDUM OPINION
(January 23, 2024)

Before the Court is Defendant Jeffrey Young-Bey's [158] Motion in Limine ("Def.'s Mot."), in which he seeks to preclude the Government and co-Defendant Martina Jones from introducing certain evidence related to a potential defense rebuttal witness, Ronald K. Thomas-Bey. For the reasons that now follow, the Court shall **DENY IN PART** and **GRANT IN PART** Defendant's [158] Motion.

## I. BACKGROUND

Defendant Young-Bey explains that he may call Mr. Thomas-Bey as a rebuttal witness. *See* Def.'s Mot. at 1; *id.* at 1 n.1. The two are "lifelong acquaintance[s]" who met in the early 1970s and whose friendship continued while both were in prison. *Id.* at 1, 5. Defendant indicates that Mr. Thomas-Bey was knowledgeable about some of the activities of the First Democracy Mortgage Investors' Group—Defendant Young-Bey's real estate company—and, therefore, he is a potential fact witness whose testimony "may be essential to rebut the government's case." *Id.* at 2. As prompted by the Court, *see* Minute Order, Jan. 17, 2024, Defendant filed a supplement stating that he anticipates Mr. Thomas-Bey's testimony may address:

(i) details regarding how Mr. Thomas-Bey originally met Mr. Young-Bey in the early 1970s through their shared religious organization; (ii) a brief summary noting that the two men stayed in touch over the years; (iii) the circumstances in 2019 and 2020 when Mr. Thomas-Bey began working on projects related to First Democracy Mortgage; (iv) first-hand eyewitness testimony to certain events related to the property transactions at issue in this case; and (v) a description of steps Mr. Thomas-Bey took related to the properties at issue and why he took such steps.

ECF No. 159 ("Def.'s Suppl.") at 1.  He also included a list of what he does *not* anticipate Mr. Thomas-Bey will be testifying to:

(i) anything related to their shared time in prison; (ii) Mr. Young-Bey's character; (iii) any details regarding their shared religious organization, the Moorish Science Temple, other than what is stated above; and (iv) any statements made by Mr. Young-Bey.

*Id.* at 1–2.

In his initial motion, Defendant seeks to preclude the Government and Defendant Jones from introducing evidence of Mr. Thomas-Bey's criminal history and any mention that Defendant Young-Bey and Mr. Thomas-Bey knew each other in prison.

In response, the Government interprets Defendant's request more broadly, stating that "Defendant Young-Bey… requests that the Government be prevented from inquiring as to the history and nature of their relationship."  ECF No. 160 ("Gov.'s Opp'n") at 2.  This would include not only that the two men knew each other in prison, but also how they met, which was through their membership in the Moorish Nation and the Moorish Science Temple.  *Id.* at 3.  The Government argues that "[i]f the Defense intends to elicit that Ronald Thomas-Bey met the Defendant through the Moorish Science Temple, they will have opened the door to an exploration of the principles of that particular group."  *Id.* at 4.  Defendant addressed this argument in his reply. *See generally* ECF No. 161 ("Def.'s Reply").

This motion is now ripe for the Court's resolution.

## II. DISCUSSION

The Court addresses the types of evidence at issue in turn: (1) Mr. Thomas-Bey's prior conviction; (2) that Defendant Young-Bey and Mr. Thomas-Bey knew each other in prison; and (3) principles of the Moorish Science Temple.

### A. Impeachment Through Prior Convictions

Defendant Young-Bey seeks to preclude the Government and Defendant Jones from impeaching Mr. Thomas-Bey with his prior conviction. Def.'s Mot. at 2. Mr. Thomas-Bey was convicted in Maryland for murder in 1975; he was sentenced to life in prison but was released in 2016. *Id.* at 1–2. Defendant argues that the probative value of this conviction is substantially outweighed by its prejudicial effect and, additionally, that it could confuse the jury. *Id.* at 2.

Admission of evidence of prior convictions to "attack[] a witness's character for truthfulness" is governed by Federal Rule of Evidence 609. Rule 609(a)(1) provides, in relevant part, that for the purposes of attacking the character for truthfulness of a witness who is not the defendant, a prior conviction "*must* be admitted" into evidence if (1) the crime was punishable by death or imprisonment in excess of one year in the convicting jurisdiction, and (2) subject to Rule 403. Fed. R. Evid. 609(a)(1) (emphasis added).[1]

Mr. Thomas-Bey's prior conviction was punishable by a term of imprisonment in excess of one year, so the first prong is satisfied. As for the second prong, Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

---

1 Mr. Thomas-Bey's release from confinement occurred within the last ten years, therefore the heightened standard set forth in Rule 609(b) do not apply.

Case 1:21-cr-00661-CKK   Document 166   Filed 01/23/24   Page 4 of 11


The United States Court of Appeals for the District of Columbia Circuit has recognized that "all felonies have some probative value on the issue of credibility." *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (en banc). In weighing the probative value of admitting evidence of convictions against the prejudicial effect to the defendant under Rule 609(a)(1), "a district court should consider the following relevant factors: (1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case;… and (5) generally, the impeachment value of the prior crime." *United States v. Pettiford*, 238 F.R.D. 33, 41 (D.D.C. 2006) (CKK) (citation omitted). While this list is not exhaustive, it does provide guidance for the basic concerns that should be considered under Rule 609(a)(1). *Id.*; *see also United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).

As for the probative value of Mr. Thomas-Bey's prior conviction, the Court first looks to the kind of crime. The D.C. Circuit has recognized a distinction between different types of offenses, explaining that "[a] 'rule of thumb'… should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not." *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967). While this provides the Court with some guidance as to how to assess the probative value of a conviction, it is not determinative. As is relevant here, courts are often divided when analyzing murder convictions in the context of Rule 609 motions. *See Pettiford*, 238 F.R.D. at 40–42 (compiling cases). Although murder is not a crime directly involving dishonesty, it is still "a serious crime that shows conscious disregard for the rights of others." *Lipscomb*, 702 F.2d at 1071 (discussing robbery conviction).

Next, the Court considers Mr. Thomas-Bey's potential testimony in the context of the case.[2] Defendant Young-Bey states that because Mr. Thomas-Bey "will be testifying directly to

---

2 "To perform this balancing, the court must know the precise nature of the defendant's

facts that are central to the charges brought against Mr. Young-Bey, Mr. Thomas-Bey's testimony is critical not only to the defense but also to the case in its entirety." Def.'s Mot. at 3. Defendant also explains that Mr. Thomas-Bey's "testimony may be essential to rebut the government's case." *Id.* at 2. Defendant's argument may cut against the outcome he seeks, as the D.C. Circuit has explained that in situations where there are conflicts in testimony, "it is of prime importance that the jury be given as much help in determining credibility as the Rules of Evidence permit." *United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980). In light of the fact that there may be conflicting testimony for the jury to resolve, Mr. Thomas-Bey's testimony—and, therefore, his credibility—may play a large role. This weighs in favor of the admission of his conviction for impeachment purposes.

However, and although Mr. Thomas-Bey was released from incarceration within the last ten years, his conviction is over forty-eight years old, which reduces the probativeness of the conviction.

As for prejudice, Defendant argues that if evidence of Mr. Thomas-Bey's prior conviction is allowed, "[t]he jurors would conclude, quite simply, that he is a murderer and cannot be trusted." Def.'s Mot. at 3. He continues also that this evidence could "lead jurors to conclude that Mr. Young-Bey must be guilty of a felony because only a guilty man would be friends with a convicted murderer." *Id.* The Court acknowledges this, but also notes that the risk of prejudice is lessened where the witness at issue is not the defendant. *Lipscomb*, 702 F.2d at 1063.

Defendant Young-Bey also argues that, under Rule 403 balancing, allowing impeachment

---

testimony." *Luce v. United States*, 469 U.S. 38, 41 (1984). Here, as the Government has pointed out, Gov.'s Opp'n at 1 n.1, Defendant has not provided a detailed proffer as to the nature of Mr. Thomas-Bey's potential testimony, instead listing vague statements such as that Mr. Thomas-Bey could speak to "eyewitness testimony to certain events related to the property transactions at issue," Def.'s Suppl. at 1.

by Mr. Thomas-Bey's prior conviction could lead to "confusion of the issues."  Def.'s Mot. at 2. He claims that this would "muddy[] the facts of the case," and that "given the severity of the crime Mr. Thomas-Bey committed it is certainly possible… that a jury might 'infer the defendant's guilt from someone else's criminal record.'"  *Id.* at 4 (quoting *Lipscomb*, 702 F.2d at 1063).

Defendant's argument seems to rest, in at least large part, on the jury's consideration of Mr. Thomas-Bey as a "murderer" and the "severity of the crime" he committed.  To cabin any possible unfair prejudice faced by Defendant Young-Bey as it relates to Mr. Thomas-Bey's conviction being that of murder, and while also respecting the general trend toward admissibility under Rule 609(a) and allowing the Government to introduce relevant, probative evidence, the Court will proceed with a compromise approach and allow the Government and Defendant Jones to introduce evidence that Mr. Thomas-Bey was previously convicted of a felony offense.  *See* Gov.'s Opp'n at 2 ("In the alternative, the Government requests the ability to ask the witness if he has been convicted of a felony offense in the past.").  However, evidence concerning the *type* of crime for which Mr. Thomas-Bey was convicted is not germane to the facts of this case and is not necessary to impeach his credibility.  *Cf. United States v. Pettiford*, 283 F.R.D. 33 at 42 (holding the same regarding defendant's prior second-degree murder conviction); *see also United States v. Tomaiolo*, 249 F.2d 683, 687 (2d Cir. 1957) (stating that evidence of prior convictions should be no more detailed than necessary to impeach credibility).  With this compromise, and after carefully balancing various factors and considering the record before it, the Court, in an exercise of its discretion, finds that the probative value of Mr. Thomas-Bey's prior conviction is not substantially outweighed by the danger of unfair prejudice nor by potential confusion of the issues under Federal Rule of Procedure 403.

The Court shall therefore **DENY** Defendant Young-Bey's motion insofar as he seeks the

exclusion of evidence of Mr. Thomas-Bey's prior conviction.

**B. Defendant Young-Bey and Mr. Thomas-Bey's Friendship While in Prison**

Defendant Young-Bey next seeks to exclude any mention of his friendship with Mr. Thomas-Bey while the two men were in prison. Def.'s Mot. at 4. He argues that the fact they knew each other in prison is not relevant under Rule 401, inadmissible under Rule 403, and would be circumventing the Court's previous ruling prohibiting the Government from impeaching Defendant Young-Bey with evidence of his two prior convictions. *Id.* at 4–5.

In response, the Government argues that "the Government should be able to inquire about the nature of [Defendant Young-Bey and Mr. Thomas-Bey's] relationship over a 50-year time period," including that they "spent a significant amount of time together in prison," as it is relevant to Mr. Thomas-Bey's bias, motivation, and credibility and therefore "bear[s] on the truthfulness of the witness' testimony." Gov.'s Opp'n at 3.

The Court holds that the Government and Defendant Jones will not be permitted to introduce evidence regarding Defendant Young-Bey and Mr. Thomas-Bey's friendship while in prison.

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court struggles to see how evidence that Defendant Young-Bey and Mr. Thomas-Bey knew each other in prison makes any fact more or less probable other than through impeachment. And that is exactly how the Government indicates they would want to use this evidence. *See* Gov.'s Opp'n at 3 (stating that the two men's friendship, including when in prison, "would bear on the truthfulness of the witness' testimony," and the fact they "spent a significant amount of time together is certainly relevant to Ronald Thomas-Bey's bias toward the Defendant

and desire to assist in his defense"). But as this Court ruled above, the Government and Defendant Jones will be permitted to introduce evidence of Mr. Thomas-Bey's felony conviction, which serves that impeachment purpose. Accordingly, permitting the introduction of evidence that Mr. Thomas-Bey and Defendant Young-Bey knew each other in prison has little, if any, relevance under Federal Rule of Evidence 401.

As for Rule 403, the fact that Mr. Thomas-Bey and Defendant Young-Bey knew each other in prison has little probative value given that its offered purpose is to undermine Mr. Thomas-Bey's credibility, and the Court is allowing that through other means, as explained above. On the other side of the Rule 403 ledger, the Court finds that this is cumulative evidence, as evidence that Mr. Thomas-Bey served time in prison is implied from evidence that he was convicted of a felony. And where the Court has already found that introduction of Defendant Young-Bey's prior convictions would be prejudicial, *see* Mem. Op. & Order, ECF No. 122, at 8–9, it follows that allowing the introduction of evidence that Defendant Young-Bey served time in prison would likewise be prejudicial. Considering the record before it, the Court finds that as the probative value of this evidence is low, it is substantially outweighed by the risk of prejudice and needless presentation of cumulative evidence such that it should be excluded under Federal Rule of Evidence 403.

The Court shall therefore **GRANT** Defendant Young-Bey's motion insofar as he seeks the exclusion of evidence that Defendant Young-Bey and Mr. Thomas-Bey knew each other in prison.

### C.  Moorish Science Temple

Finally, Defendant explains in his supplement that Mr. Thomas-Bey's testimony may include "details regarding how Mr. Thomas-Bey originally met Mr. Young-Bey in the early 1970s through their shared religious organization." Def.'s Suppl. at 1. He continues that Mr. Thomas-

Bey would not be testifying to "any details regarding their shared religious organization, the Moorish Science Temple, other than" the fact that they met through that organization, *id.* at 1–2, as well as "why they both have names with the 'Bey' suffix" so as to ensure the jury does not think they are related, Def.'s Reply at 2.

The Government argues that "[i]f the defense intends to elicit that Ronald Thomas-Bey met the Defendant through the Moorish Science Temple, they will have opened the door to an exploration of the principles of that particular group."  Gov.'s Opp'n at 4.  As for specific principles, "one of the doctrines of the Moorish Science Temple is that its members are immune from United States federal, state, and local laws." *Id.* at 3.  They continue that the Moorish Science Temple is also affiliated with the Moorish Sovereign movement, a group that is "known to create their own government documents and legal documents" and whose "common tactics include squatting in foreclosed or even occupied residences." *Id.*  The Government indicates that they would use this information to impeach Mr. Thomas-Bey by calling into question his bias toward Defendant Young-Bey. *Id.* at 4.

In reply, Defendant argues that this is strictly prohibited by the Federal Rules of Evidence, citing Rule 610.  Def.'s Reply at 1–2.  Federal Rule of Evidence 610 provides that "[e]vidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." Fed. R. Evid. 610.  However, an Advisory Committee Note clarifies that while Rule 610 "forecloses inquiry into the religious beliefs or opinions of a witness for the purpose of showing that his character for truthfulness is affected by their nature, an inquiry for the purpose of showing interest or bias because of them is not within the prohibition."  Fed. R. Evid. 610, Advisory Committee Notes to 1972 Proposed Rules.  Accordingly, the Government and Defendant Jones could only introduce principles of the Moorish Science Temple to impeach Mr. Thomas-

9

Bey by probing his potential interest or bias.

Although "the Rules do not by their terms deal with impeachment for 'bias,'… it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence." *United States v. Abel*, 469 U.S. 45, 49, 51 (1984).  Furthermore, "[a] witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias." *Id.* at 52.

Taking these legal standards together, that Defendant and Mr. Thomas-Bey met through and are members of the Moorish Science Temple, whose belief system includes immunity from laws of the United States, and whose activities include creating their own legal documents and squatting in foreclosed residences, certainly could demonstrate bias by Mr. Thomas-Bey in favor of Defendant Young-Bey.  The Government and Defendant Jones will therefore be permitted to introduce evidence regarding these specific principles of the Moorish Science Temple and Moorish Sovereign movement for the purposes of impeachment by bias.

## III. CONCLUSION

For the reasons set forth above, the Court shall **DENY IN PART** and **GRANT IN PART** Defendant Young-Bey's [158] Motion in Limine.

The Court shall **DENY** Defendant Young-Bey's motion insofar as he seeks the exclusion of evidence of Mr. Thomas-Bey's prior conviction.  The Government and Defendant Jones are permitted, for purposes of impeachment, to introduce evidence that Mr. Thomas-Bey was previously convicted of a felony offense.

The Court shall **GRANT** Defendant Young-Bey's motion insofar as he seeks the exclusion of evidence that Defendant Young-Bey and Mr. Thomas-Bey knew each other in prison.

Additionally, the Court finds that the Government and Defendant Jones are permitted, for

purposes of impeachment by bias, to introduce evidence regarding specific principles of the Moorish Science Temple.

An Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge