**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JEFFREY M. YOUNG-BEY,<br><br>        Defendant. | Criminal No. 21-661-1 (CKK) |

**MEMORANDUM OPINION**
(March 8, 2024)

After a lengthy jury trial, Defendant Jeffrey Young-Bey was convicted of twelve counts. *See* Verdict Form, ECF No. 206. Now pending before the Court is Defendant Young-Bey's [193] Motion for Mistrial ("Def.'s Mot."), in which he moves for a mistrial based on two events that occurred during the jury trial. For the following reasons, the Court will **DENY** Defendant Young-Bey's [193] Motion.

## I. BACKGROUND

On February 2, 2024, counsels for Defendant Young-Bey emailed the Court alerting it of two issues they considered highly prejudicial. Defendant Young-Bey subsequently filed the now-pending motion arguing that those two events, which occurred during the testimony of FBI Special Agent Durrell Douglas on February 1, 2024, were each unfairly highly prejudicial so as to require a mistrial. *See* Def.'s Mot. at 1.

### A. Defense Exhibit 2028

The first event occurred when, during cross-examination of Special Agent Douglas, counsel for Defendant Young-Bey asked to show Defense Exhibit 2028 ("DX2028") to Special Agent Douglas to refresh his recollection. *Id.* at 2. Defense counsel had been questioning Special

Agent Douglas about Defendant Young-Bey's cell phone records and, specifically, a certain phone number that was allegedly "a principal number of Mr. Young-Bey's."  Transcript of Record, ECF No. 215, at 168:25.  That phone number was included on the arrest warrant for Defendant Young-Bey, which was provided by Defense counsel and labeled DX2028.  After Special Agent Douglas indicated uncertainty about said phone number being Defendant Young-Bey's and whether it was listed on the arrest warrant issued in this case, *id.* at 167:17–24, Defense counsel asked "Would it help you to look at the arrest warrant?," *id.* at 169:3, to which Special Agent Douglas replied, "Sure," *id.* at 169:4.  Defense counsel then stated "[j]ust for refreshment purposes, please." *Id.* at 169:10.  Government counsel then echoed "if this is for refreshment, it shouldn't be published." *Id.* at 169:11–12.  Defense counsel again stated "I was asking just for refreshment purposes to pull up Defense Exhibit 2028, just for the witness to see." *Id.* at 169:15–17.  However, at some point during this exchange, DX2028 was inadvertently published to the jury by the Courtroom Deputy.  Def.'s Mot. at 2.  The transcript does not indicate when the document was published nor unpublished to the jury.

In addition to containing Defendant Young-Bey's phone number, that page of the arrest warrant also contained a section labeled "History of violence, weapons, drug use." *Id.* at 3.  That section included the following: "Armed Robery [sic] with a knife, Assault on a police officer, Assault/Battery, Strong Arm." *Id.*  Defense counsel had not redacted any of this information from the exhibit.  *See* ECF No. 194 ("Gov.'s Opp'n") at 3.

Defendant claims that the exhibit "remained on the screen for as long as 30 seconds," Def.'s Mot. at 3, and the Government says that it was "at most 30 seconds," Gov.'s Opp'n at 3.  Defendant says that "members of the defense team observed nearly every jury member looking intently at the published exhibit."  Def.'s Mot. at 3.  He continues that the exhibit was unpublished only "after

the jury had the chance to read… inaccurate information relating to Mr. Young-Bey's criminal history for violence and weapons, unfairly prejudicing the jurors." *Id.* at 4.  Defendant Young-Bey was never convicted of the charges listed. *Id.* at 6.  The Government, however, states that during the time DX2028 was published to the jury, "neither Government counsel had noticed the references to a history of violence given how briefly the document had been published."  Gov.'s Opp'n at 4.  They argue that, given the "fleeting and momentar[y] display[]" of "a full page of text," "it is not clear whether any member of the jury would have *read* the portion at issue—all questioning and focus was directed toward the 'last known phone number' entry—much less understood or credited it." *Id.* (emphasis in original).

Defendant argues that the inadvertent publication of DX2028 to the jury, which included the section labeled "History of violence, weapons, drug use," is grounds for mistrial.

The Court notes that Defense counsel did not express any concern regarding this inadvertent publication during Special Agent Douglas's testimony, despite allegedly "observ[ing] nearly every jury member looking intently at the published exhibit" at that time.  It was not until the following day that they notified the Court via email before filing the instant motion a few days later.

The Court added a curative instruction to address this issue, *see* Final Jury Instructions, ECF No. [224] at 79 (added to Instruction No. 43), which was read to the jury before they began their deliberations and also provided to the jury to have with them in the jury room during said deliberations.

### A. Special Agent Douglas's Answer

The second event occurred during counsel for Defendant Martina Jones's cross-examination of Special Agent Douglas.  Defendant Jones's counsel was questioning Special Agent

Douglas regarding an email from Defendant Young-Bey to a Mr. Sean Richway that referenced the "owner" of 164 Bryant Street Northwest. *See* Transcript of Record, ECF No. 215, at 186:22–25. The email reads, "The owner wishes to partner with me to invest in fixer uppers;" Defense counsel read this sentence out loud during his questioning. *Id.* at 188:11–12.

Defense counsel for Jones asked Special Agent Douglas, "the basic premise of this email is completely false, isn't it?," and "[t]he premise of the email… is part of a fraud. Yes?", to which Special Agent Douglas answered, "Correct." *Id.* at 187:19–20, 187:24–188:2. Defense counsel for Jones continued, "yet the Government is crediting this part of the account," *id.* at 188:7–8, and then asked "what reason do you have[,] given all that you know about this case[,] to believe this sentence is true?," *id.* at 188:14–16. Special Agent Douglas responded by stating, "Well, so he says the owner wishes to partner with him to invest in fixer uppers. As far as whether that's true or not, I couldn't say. I didn't write that. Mr. Young-Bey would have to be the one to answer that question for you. Here, we just go by the facts. This is an email in which he's saying the property is owned free and clear and that the owner wishes to partner with him to invest in fixer uppers. That's the only thing we go by, is what's on the document." *Id.* at 188:17–25.

Defendant argues that Special Agent Douglas's statement "Mr. Young-Bey would have to be the one to answer that question for you" impermissibly shifted the burden of proof to Defendant Young-Bey, constituting grounds for mistrial.

The Court notes that counsel for Defendant Young-Bey did not express concern regarding this statement at the time, and counsel for Defendant Jones continued his cross-examination without any interruption. It was not until the following day that Defendant Young-Bey's attorneys notified the Court of their concern via email before filing the instant motion a few days later.

The Court added a curative instruction to address this issue, *see* Final Jury Instructions,

4

ECF No. [224] at 14 (added to Instruction No. 8), which was read to the jury before they began their deliberations and also provided to the jury to have with them in the jury room during said deliberations.

## II. LEGAL STANDARD

Declaring a "mistrial is a severe remedy—a step to be avoided whenever possible, and one to be taken only in circumstances manifesting a necessity therefor." *United States v. McLendon*, 378 F.3d 1109, 1112 (D.C. Cir. 2004) (internal citation and quotation marks omitted). The "single most important consideration" in ruling on a motion for a mistrial is "the extent to which the defendant was unfairly prejudiced." *Id.* (internal citations omitted). In making that determination, the Court considers the force of the unfairly prejudicial evidence, whether that force was mitigated by curative instructions, and the weight of the admissible evidence that supports the verdict. *See id.* (citing *United States v. Eccleston*, 961 F.2d 955, 959–60 (D.C. Cir. 1992)).

## III. DISCUSSION

The Court holds that neither event—the inadvertent publication of DX2028 to the jury, nor Special Agent Douglas's comment during cross-examination—was so unfairly prejudicial so as to require a mistrial. The Court will address each in turn.

### B. Defense Exhibit 2028

As outlined above, the Court considers three factors when presented with a motion for mistrial: the force of the unfairly prejudicial evidence, whether that force was mitigated by curative instructions, and the weight of the admissible evidence that supports the verdict. *See McLendon*, 378 F.3d at 1112.

As for the first factor, the Court finds that the publication of DX2028 to the jury did not have high prejudicial potential. To begin, the Court cannot say how long DX2028 was published

to the jury.  The parties agree it may have been approximately 30 seconds, a brief time period.  *Cf.*

*United States v. Danford*, 435 F.3d 682, 687 (7th Cir. 2006) (upholding district court's denial of

mistrial after a letter containing prejudicial information was inadvertently published to the jury for

"a relatively short period of time (about one minute)").  The Court also cannot say whether the

jurors read the section at issue during that time.  Defendant claims that members of the jury were

"looking intently at the published exhibit," Def.'s Mot. at 3, but even such an observation does not

indicate which section of the arrest warrant they were reading.  As the Government points out, any

jurors who were reading the warrant may have been focusing on the section that included

Defendant Young-Bey's phone number, as that was the focus of Special Agent Douglas's cross-

examination during that time, instead of the section labeled "History of violence, weapons, drug

use."  There is no indication that any jurors had the time and did in fact read the section at issue

and understand its significance.

Defendant references the Court's previous order precluding the introduction of Defendant

Young-Bey's prior 1997 conviction under Federal Rule of Evidence 609(a)(2) because of its

prejudicial effect, claiming that DX2028 is even more prejudicial as it included "information from

charges for which Mr. Young-Bey was never, in fact, convicted."  *Id.* at 6; *see* Mem. Op., ECF

No. 122 at 4–8 (Court's analysis regarding the 1997 conviction).  He continues that "the jury

[was]… highly likely to make inappropriate and incorrect assumptions about Mr. Young-Bey's

character and… his overall conduct" in the instant case based upon that information.  *Id.*  However,

the Court's opinion regarding Defendant Young-Bey's 1997 conviction does not lead to the

conclusion that the inadvertent publication of one page of an arrest warrant, which, among other

things, listed criminal history, is highly prejudicial, particularly where it cannot be said that the

jurors did in fact read and understand that part of the warrant.

As for the next factor, the Court finds that any potential prejudice was sufficiently mitigated by the Court's instructions to the jury.  DX2028 was not admitted into evidence and, therefore, was covered by the Court's repeated instructions to only consider evidence that was actually admitted.  The Court instructed the jurors of this during the presentation of its Preliminary Instructions before the trial began, as well as during the Final Jury Instructions after closing arguments, *see* Final Jury Instructions, ECF No. [224] at 11–12, 14 (from Instruction No. 5, stating "You may only consider the testimony and exhibits admitted in evidence in this case."; from Instruction No. 6, stating "During your deliberations, you may consider only the evidence properly admitted in this trial.  The evidence in this case consists of the sworn testimony of the witnesses and the exhibits that were admitted into evidence."; from Instruction No. 11, stating "During your deliberations, you may consider only the evidence properly admitted in this trial.  The evidence in this case consists of the sworn testimony of the witnesses, the exhibits that were admitted into evidence, the facts of which I took judicial notice, and the facts and testimony stipulated to by the parties.").  The Court provided an additional curative instruction to the jury in its Final Jury Instructions to specifically address the occurrence at issue.  This addition reads that "exhibits that were used to refresh a witness's recollection, which were not admitted into evidence, as well as those exhibits' contents, should not be considered as evidence in the case."  *See id.* at 79 (from Instruction No. 43).

The Supreme Court of the United States has explained that "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions."  *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (internal citations omitted).  Here, the Court has no reason to believe the jury was incapable of obeying the curative instruction.  The

instruction was clear, specifically referencing "exhibits that were used to refresh a witness's recollection," but not repeating in any more detail what was included in such exhibit so as to avoid jogging the jurors' memory if they in fact had read the section at issue, *cf. United States v. Foster*, 557 F.3d 650, 656 (D.C. Cir. 2009) (the court "did not repeat [the inadmissible] testimony" at issue).  The Court adds that the jurors in this trial were notably attentive and compliant with the Court's directions throughout the proceedings.

Finally, as for the third factor, the Court will not enumerate the myriad exhibits and witnesses presented by the Government, but finds that the Government provided ample evidence to support the jury's verdict, making it exceedingly unlikely that the inadvertent, momentary publication of DX2028 to the jury changed a possible acquittal on twelve counts to a conviction on twelve counts.  *See United States v. Crews*, 856 F.3d 91, 97 (D.C. Cir. 2017).

Accordingly, the Court finds that the publication of DX2028 to the jury did not cause unfair prejudice so as to require a mistrial.

## C. Special Agent Douglas's Answer

Regarding the second event at issue—Special Agent Douglas's comment that "Mr. Young-Bey would have to be the one to answer that question for you"—the Court will again proceed by analyzing the three factors outlined above.

First, the Court finds that the force of the unfairly prejudicial evidence was low.  Defendant argues that "Special Agent Douglas inappropriately shifted the burden to defendant Young-Bey by stating that Mr. Young-Bey should be the one to explain an answer to the jury," and that "any commentary by the government or its agents that impinges on a defendant's Fifth Amendment rights is never acceptable and highly prejudicial."  Def.'s Mot. at 8.  The Court disagrees with this characterization.

8

It is true that the government or its agents "need not directly comment on the defendant's silence to violate this rule, so long as the language used, in context, is such that 'the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *United States v. Harris*, 627 F.2d 474, 476 (D.C. Cir. 1980) (quoting *United States v. Williams*, 521 F.2d 950, 953 (D.C. Cir. 1975)).  This inquiry is "confine[d]… to the *intent* of the prosecutor [or Government agent] and the *objective* effect the remarks would have had on a *reasonable* juror." *United States v. Monaghan*, 741 F.2d 1434, 1438 (D.C. Cir. 1984) (emphasis in original).  The facts here do not satisfy this standard.

At the time of Special Agent Douglas's testimony, Defendant Young-Bey had not yet made his choice about testifying.  *See* Transcript of Record, ECF No. 215 (Special Agent Douglas's testimony took place on February 1, 2024); Transcript of Record, ECF No. 216 (presentation of Defendant Young-Bey's case took place on February 2, 2024, during which Defendant Young-Bey did not himself testify).  The jury, therefore, did not know that Defendant Young-Bey would not be testifying at the time of Special Agent Douglas's comment.  Accordingly, it is a stretch to say that it was Special Agent Douglas's intent to criticize or call attention to Defendant Young-Bey's not-yet-made decision not to testify, just as it is a stretch to say that the jury would naturally and necessarily take his remark to be a comment on Defendant Young-Bey's not-yet-made decision.  *See United States v. Brown*, 508 F.3d 1066, 1072 (D.C. Cir. 2007) (finding where the comments "occurred before the jury learned that [defendant] would not testify,… [i]t strains credulity to believe that jurors would have 'naturally and necessarily' connected any of the prosecutor's earlier references… with [defendant's] decision not to testify two days later.").

Furthermore, the comment must be taken in context.  The comment at issue was one line from Special Agent Douglas's answer explaining that he did not know whether the premise of the

email was true, but that the author of the email (Defendant Young-Bey) could speak to that. A jury would not naturally and necessarily take this remark to be a comment on Defendant Young-Bey's decision not to testify. Special Agent Douglas did not say, for example, that "Mr. Young-Bey would have to be the one to answer that question for you, *but he is not*." *Cf. United States v. Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996) (indicating that referring to the absence of testimony from a defendant could be problematic). Instead, Special Agent Douglas's remark was in support of his own testimony, underscoring his own lack of first-hand knowledge of the veracity of the email's contents. *Cf. Monaghan*, 741 F.2d at 1438 (considering a prosecutor's comment to be intended to be a defense of a witness's credibility, rather than "an allusion to [defendant's] silence"). His comment differs from those that courts have found to be unfairly prejudicial, *see, e.g.*, *Wilson v. United States*, 149 U.S. 60, 66–67 (1893) (finding that where a prosecutor stated, "'I want to say to you that, if I am ever charged with crime, I will not stop by putting witnesses on the stand to testify to my good character, but I will go upon the stand, and hold up my hand before high heaven, and testify to my innocence of the crime,' he intimated to them as plainly as if he had said in so many words that it was a circumstance against the innocence of the defendant that he did not go on the stand and testify"), and is more like those deemed acceptable, *Harris*, 627 F.2d at 475–76 (finding "comments [that] did not expressly refer to the defendant's failure to take the stand, and… offered only in rebuttal to the defense's argument that perhaps there was some other explanation for the defendant's presence [at a known center for drug-related activity]," as, "[i]n this context, pointing out that the defense has offered no evidence to support its argument" and therefore "was not a violation of the… principle").

As for the second factor, the Court finds that any potential prejudice was mitigated by the curative instruction provided to the jury. To begin, the jurors were instructed about the burden of

proof on at least three separate occasions: during voir dire, during the Court's reading of Preliminary Instructions before the trial began, and in the Final Jury Instructions after closing arguments. As provided in the Final Jury Instructions, Instruction No. 8 clearly outlines the burden of proof, stating, among other language, that "[e]very defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven the defendant is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require any defendant to prove their innocence or to produce any evidence or testify at all." *See* Final Jury Instructions, ECF No. [224] at 14. To address Defendant's concern regarding Special Agent Douglas's comment, the Court added the following language to Instruction No. 8 as a curative instruction: "Moreover, if a witness has suggested that the burden has shifted to the defendant to offer proof, that should be disregarded as an inaccurate statement of the law." *Id.* Given that Special Agent Douglas's statement was not likely to have been understood by jurors to shift the burden, this clear instruction would have cured any confusion, if at all. The Court has no reason to believe that the jury was incapable of following this instruction. *See Greer*, 483 U.S. at 766 n.8.

The Court also notes that, insofar as Defendant Young-Bey is concerned about the implication of his Fifth Amendment rights, the Court also provided an instruction in the Final Jury Instructions addressing this directly. Instruction No. 16 states that "[e]very defendant in a criminal case has an absolute right not to testify. Jeffrey Young-Bey… [has] chosen to exercise this right. You must not hold this decision against them, and it would be improper for you to speculate as to the reason or reasons for their decisions. You must not assume the defendants are guilty because they choose not to testify." *Id.* at 20.

Third and finally, as was discussed above, the Government provided ample admissible

evidence to support the jury's verdict.

Accordingly, the Court finds that Special Agent Douglas's comment that "Mr. Young-Bey would have to be the one to answer that question for you" did not cause unfair prejudice so as to require a mistrial.

### IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** the Defendant's [193] Motion for Mistrial.  An appropriate Order accompanies this Memorandum Opinion.

          /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
