IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY M. YOUNG-BEY,<br><br>Defendant. | Case No. 21-CR-661 (CKK) |

### UNITED STATES' RESPONSE IN SUPPORT OF RESTITUTION

As the Court is aware, the issue of the appropriate amount of restitution arose during the sentencing hearing in this matter. Because of the number of victims and difficulties communicating with Roosevelt Twiggs, the owner of 164 Bryant Street (the "Bryant Street Property"), and Rashid Jelani, the former owner of 7712 12th Street NW (the "12th Street Property"), the government included a table in its Sentencing Memo setting forth its best estimate of restitution. *See* ECF No. 252 at 15. On July 20, the day before sentencing, the Defendant filed an opposition to the government's restitution estimates. *See* ECF No. 260. As explained below, the government has conducted additional investigation and submits this Response to the Defendant's opposition.

### ADDITIONAL BACKGROUND

During the sentencing hearing, the Court correctly ordered $379,500 in restitution to Stewart Title Company and $135,000 in restitution to Fidelity National Title Company. Because of questions related to the amount and nature of losses sustained by Mr. Twiggs, Mr. Jelani, and Mr. Levine, however, the Court ordered the government to provide additional documentation of those losses. The Court also scheduled a restitution hearing in the event the parties continued to have disputes about restitution.

1

In response to the Defendant's objections, the government interviewed Roosevelt Twiggs and obtained additional documentation of his losses, which are set forth in Exhibit A and described more fully below. Likewise, the government interviewed Richard Levine, owner of RBL Ventures. Finally, the government interviewed an attorney for Rashid Jelani, who provided additional information about the loss sustained by Mr. Jelani. The government submits that, in addition to the restitution imposed regarding Stewart Title and Fidelity National Title, the Court order the Defendant to pay restitution in the following amounts:

| Victim | Amount of Loss |
|---|---|
| Roosevelt Twiggs | $54,323.51 |
| Rashid Jelani | $125,521 |
| Richard Levine | $19,990 |

## **ARGUMENT**

Under the Mandatory Victim Restitution Act ("MVRA"), the Court shall order a defendant to pay "restitution to each victim in the full amount of each victim's losses." *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012) (quoting 18 U.S.C. § 3664(f)(1)(A)). Restitution is authorized for the "actual, provable loss suffered by the victim and caused by the offense conduct." *Id*. (citations omitted). Pursuant to the MVRA, the Court need only conclude that a victim has suffered a loss by a preponderance of the evidence. *Id*.

The Defendant's fraud caused the losses set forth in the above table. As to Mr. Levine's loss, he described the real estate transaction that fell apart due to the Defendant's fraudulent deed, as well as the subsequent loss he sustained as a result. *See* Ex. A-1 at USA 1-3. The Defendant argues that, because Gideon Capital, a third party involved in a lawsuit related to the 12th Street

Property, "extorted" Mr. Levine's loss, the Defendant was not the proximate cause of the loss. That argument misses the mark. Mr. Levine incurred the loss because he was "dragged into" the lawsuit involving the 12th Street Property, Ex. A-1 at USA 2, a situation that was not only "reasonably foreseeable," but practically a foregone conclusion. *See Paroline v. United States*, 572 U.S. 434, 445 (U.S. 2014). Accordingly, the Defendant should be required to make Mr. Levine whole.

Likewise, the Defendant's conduct caused Mr. Jelani to lose more than $125,000. As Mr. Jelani explained in his testimony at trial, at the point when the Defendant stole the 12th Street Property, the property had gone into vacant status, which caused the property taxes to increase. 1.29.24 Tr. at 212-14. Mr. Jelani, however, was attempting to bring the property out of vacant status by constructing a fence. *Id*. at 238. After the Defendant's fraud came to light, Mr. Jelani could not continue to try to improve the property, at which point the Department of Consumer and Regulatory Affairs put the property into blighted status, which increased the taxes significantly. *Id*. at 212. Although the Jelanis attempted to appeal the blighted status, those appeals were unsuccessful. Thus, when the Jelanis ultimately sold the 12th Street Property, they were forced to pay the exorbitant blighted tax bill. *See* Ex. A-1 at USA 027. The Defendant will likely claim that he did not cause the property to go into disrepair, which is true. When he fraudulently took title to the property, however, he prevented Mr. Jelani from addressing the issues that caused the DCRA to put the home into blighted status. And because it was foreseeable to the Defendant that the Jelanis would not have access to their property or be able to make any improvements, he should be held to account for the loss they sustained.

Finally, the Defendant should also be ordered to pay restitution to Mr. Twiggs in the amount of $54,323.51. This amount includes two categories of loss attributable to the Defendant's

3

fraud: (1) $6,323.51 in inflated tax penalties; and (2) $48,000 in Mr. Twiggs's lost rental income between 2021 and November 2023, the date Mr. Twiggs obtained a default judgment for the 164 Bryant Street Property. As to the inflated tax bills, the Defendant concedes this restitution is owed to Mr. Twiggs.

With respect to the loss of rental income, Special Agent Douglass reviewed a receipt book and created a summary chart with receipts Mr. Twiggs provided to tenants during the period when the title was not in his name. *See* Ex. A-1 at USA 010-011. The 164 Bryant Street Property has 4 bedrooms that Mr. Twiggs never had any issues renting out until the Defendant stole the title to the home. When tenants moved out after the Defendant's fraud, Mr. Twiggs did not advertise the empty rooms because the title was not in his name. And one of the tenants (who has lived in the 164 Bryant Street Property since 2020 and still lives in the property to this day) has consistently failed to pay rent. According to Mr. Twiggs, he took steps in 2021 or 2022 to try to evict this tenant but was unable to do so because the deed was not in his name. Since the title is now (finally) back in his name, he is in the process of hiring an attorney, evicting the tenant, and ultimately selling the property. As the summary chart shows, Mr. Twiggs suffered losses in 2021, 2022, and 2023 that were caused by the Defendant's conduct. And because it would be reasonably foreseeable to the Defendant that Mr. Twiggs would be unable to rent out rooms in a property for which he was not the listed owner, the loss of rental income was the result of and caused by the Defendant's.

Because the issues in dispute do not require testimony and can be argued by the parties or based on attorney proffers, the government does not believe that an evidentiary hearing is necessary. To the extent the Defendant seeks to challenge the authenticity of any of the exhibits included as part of Exhibit A-1 or any aspect of Mr. Twiggs's loss of rental income, the government intends to call Special Agent Douglas to testify about his conversations with Mr.

Twiggs.

One final issue the government wishes to raise with the Court as it considers restitution is the allocation of funds seized as part of the FBI's investigation. In June 2020, the FBI seized approximately $269,000 from the Defendant's bank account. In the government's view, the Court should allocate the funds seized on a proportional basis *vis a vis* the total amount of restitution the Court orders.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should impose restitution in the amounts set forth in the above table.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        UNITED STATES ATTORNEY

By:    /s/*Christopher R. Howland*
        Christopher R. Howland
        Kevin Rosenberg
        Assistant United States Attorneys
        D.C. Bar No. 1016866 (Howland)
        601 D Street, N.W.,
        Washington, D.C. 20530
        202-252-7106 (Howland)
        Christopher.Howland@usdoj.gov